IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEXSTAR MEDIA INC., <br><br> **Plaintiff,** <br> v. <br><br> TAYLORED MEDIA GROUP, LLC, <br> and JAMIE TAYLOR, <br><br> **Defendants.** | **Civil Action No.: 3:25-cv-1119** |

## COMPLAINT

COMES NOW, Plaintiff, Nexstar Media Inc. ("Nexstar" or "Plaintiff"), a corporation duly organized and existing under the laws of Delaware and brings this action against Defendant Taylored Media Group, LLC ("Taylored Media"), a Connecticut Limited Liability Company and Jamie Taylor ("Taylor"), an individual and resident of Connecticut (Taylor and Taylored Media collectively referred to as "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil action arising under the trademark laws of the United States, Title 15, United States Code, Sections 1051 et seq., as amended (hereinafter the "Lanham Act") and 1125. This Court has subject matter jurisdiction pursuant to 15 U.S.C. Sections 1121, and 28 U.S.C. Sections 1331, 1338, and 1367(a) because this Complaint raises federal questions under the Lanham Act and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. Section 1367 because the common law claims alleged are related to the federal law claims in that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper under 28 U.S.C. Section 1391(b)(1) because the Defendant resides

1

or actively conducts business in this judicial district, 28 U.S.C. Section 1391(b)(2), in that a substantial part of the events or omissions giving rise to these claims occurred in this district, and 28 U.S.C. Section 1391(b)(3) in that Defendant is subject to personal jurisdiction in this district with respect to this action.

## PARTIES

3.      Nexstar is a corporation duly organized and existing under the laws of Delaware, with its headquarters in Irving, Texas. Nexstar is a leading media company that produces and distributes local and national news, sports, and entertainment content across its nationwide television and digital platforms, with more than 200 owned or partner stations in 116 U.S. markets.

4.      Nexstar operates in Connecticut as WTNH-TV 8, a local television station located in New Haven, Connecticut, serving the Hartford-New Haven community.

5.      Taylored Media Group, LLC, is a Connecticut limited liability company located at 4 Main Street, Farmington, Connecticut. It was founded by Jamie Taylor, a former employee of Nexstar at WTNH-TV and is a full-service marketing agency.

6.      Jamie Taylor is an individual residing in Farmington, Connecticut. She is a former employee of Nexstar at WTNH-TV and founder of Taylored Media Group, LLC.

## TRADEMARKS AT ISSUE

7.      Nexstar is the owner of the trademark "CRUISIN' CONNECTICUT" that it has used in commerce since September 2, 2016 and has a pending application, U.S. Serial Number 99/260,157, for "Cruisin' Connecticut" with the United States Patent and Trademark Office for use in connection with:

> "Providing online non-downloadable videos in the field of entertainment and local
>
> attractions and experiences; entertainment services, namely, the provision of video
>
> segments featuring local interest topics, attractions, and experiences delivered via

television and the internet" in International Class 041.

Attached as Exhibit A is a true and correct copy of the Trademark Status and Document Retrieval (TSDR) Report and currently pending trademark application for U.S. Serial Number 99/260,157, for "Cruisin' Connecticut" with the United States Patent and Trademark Office.

8.    Defendant Taylored Media Group, LLC has a pending application, U.S. Serial Number 99/223,377, for "CRUISIN' CT" with the United States Patent and Trademark Office for use in connection with:

"Advertising and marketing services, namely, the promoting the goods and services of others; Promoting the goods and services of others by distributing discounts, coupons, rebates, and special offers; Advertising and directory services, namely, promoting the services of others by providing a web page featuring links to the websites of others; Providing consumer information and related news in the field of consumer goods, retail services, hikes, scenic drives, hidden gems, attractions, theme parks, salons, eateries, and restaurants; Organizing and developing charitable projects that aim to raise money for others; Charitable services, namely, promoting goods and services for others; Television advertising; Digital advertising services; Promoting and marketing the goods and services of other by marketing and advertising them online, on social media platforms, and by newsletters" in International Class 035.

Attached as Exhibit B is a true and correct copy of the Trademark Status and Document Retrieval (TSDR) Report and currently pending trademark application on behalf of Taylored Media for U.S. Serial Number 99/223,377, for "CRUISIN' CT" with the United States Patent and Trademark Office filed by Taylored Media.

**RELEVANT FACTS**

9.      Nexstar operates as WTNH-TV, Channel 8, a local television station located in New Haven, Connecticut, serving the Hartford-New Haven community.

10.     In February 2013, Jamie Taylor ("Taylor") worked at Nexstar as an account executive at WTNH-TV Channel 8. Her job duties included working with direct advertising and advertising agencies to execute marketing campaigns including WTNH's broadcast television, digital advertising, search engine marketing, social media, and community outreach – including but not limited to selling advertising related to WTNH's "Cruisin' Connecticut" series.

11.     On September 2, 2016, Nexstar first aired and published online its "Cruisin' Connecticut" segment, highlighting and promoting local businesses in and around Connecticut. Exhibit A, September 2, 2016 "Cruisin' Connecticut." The segment was aired on the WTNH-TV station and published online at https://www.wtnh.com/news/cruisin-connecticut-fly-18-above-long-island-sound-on-blackbird-hovercrafts/. The link remained active since it was first published on September 2, 2016 and continues to remain active today.

12.     A true and correct copy of the first "Cruisin' Connecticut" segment is below:



https://www.wtnh.com/news/cruisin-connecticut-fly-18-above-long-island-sound-on-

blackbird-hovercrafts/ Posted September 2, 2016; Accessed July 1, 2025.

13.     Shortly after its launch in 2016, Nexstar adopted a stylized logo for its "Cruisin'

Connecticut" series, as is shown below:



https://www.wtnh.com/on-air/cruising-connecticut/cruisin-connecticut-a-hint-of-

hollywood-at-the-warner-theatre-in-torrington/ Posted February 24, 2027; Accessed July

1, 2025.

14.    Nexstar continues to use this stylized "Cruisin' Connecticut" logo today:



https://www.wtnh.com/on-air/cruising-connecticut/cruisin-connecticut-family-fun-on-the-water-with-branford-river-paddlesports/ Posted June 13, 2025; Accessed July 1, 2025.

15.    Nexstar expended tremendous time, expense, and effort in producing and promoting its "Cruisin' Connecticut" series, a beloved segment that continues to air today. All "Cruisin' Connecticut" segments were aired on WTNH-TV and then published on the WTNH-TV website, as well as WTNH's YouTube channel. All segments remained live on their associated websites from the date of publication and continue to remain live and accessible on the web today.

16.    The Cruisin' Connecticut segments, available via both broadcast and web pages, promote the services of local businesses and scenic locations and provide related news and consumer information for those businesses and locations.

17.    In all, Nexstar has produced more than 100 "Cruisin' Connecticut" segments, that still remain accessible via this link: https://www.wtnh.com/on-air/cruising-connecticut/:



Accessed July 1, 2025.

18.    The "Cruisin' Connecticut" segments are also available via the Nexstar/WTNH News8's YouTube page:



https://www.youtube.com/@WtnhNews8/search?query=cruisin%20connecticut Accessed

July 1, 2025.

19.    The "Cruisin' Connecticut" segments continue to be produced and published, with

new segments being added often.

20.    As an Account Executive at Nexstar/WTNH, Taylor was not only very familiar

with the "Cruisin' Connecticut" segments but her job responsibilities included selling "Cruisin'

Connecticut" segments to advertising clients, a key way that Nexstar earns revenue.

21.    On October 11, 2019, Taylor filed a Certificate of Organization with the

Connecticut Secretary of State founding Taylored Media Group, LLC. Taylor was listed as the

Organizer and signed the filed Articles. Exhibit C, Certificate of Organization, Taylored Media

Group, LLC. Taylor was listed as Managing Member and Taylor's husband Ryan was also listed

as Member. *Id.*

22.    In December 2019, Taylor's employment at Nexstar/WTNH-TV ended.

23.    In or around May 2025, Nexstar became aware that Taylor and Taylored Media

Group had begun using the name and logo "Cruisin' Connecticut" on their website

8

https://www.cruisinct.com/ to promote and market local businesses and locations and sell marketing and advertising services, just as Taylor did while she worked at Nexstar/WTNH. The name is the same and the logo confusingly similar to the Nexstar/WTNH "Cruisin' Connecticut" segments. A screenshot of Taylored Media Group's "Cruisin' CT" page is below:



Posted February 11, 2025; Screenshot obtained July 1, 2025.

24.     The https://www.cruisinct.com/ website was registered in August 2024.

25.     Taylor and Taylored Media also use the confusingly similar name and logo on an Instagram page, with the handle @CruisinCT, which it describes as a "Local & travel website," "Exploring Connecticut' Hidden Gems," and "Discover must-see spots, local eats, & scenic drives":



Accessed July 1, 2025.

26.      On May 19, 2025, Nexstar sent a cease and desist letter to its former employee and her company Taylored Media Group, requesting that she immediately cease using the "Cruisin' Connecticut" mark and remove it from her website. Exhibit D, May 19, 2025 Cease and Desist Letter from M. Shoultz to J. Taylor. The May 19 Cease and Desist Letter noted that Taylor, as a result of her previous employment with WTNH, was familiar with the longstanding "Cruisin' Connecticut" series. *Id.*

27.    On June 8, 2025, instead of removing the infringing material or responding to Nexstar's cease and desist letter, Taylored Media filed a USPTO trademark application for the mark "CRUISIN' CT" for use in connection with:

"Advertising and marketing services, namely, the promoting the goods and services of others; Promoting the goods and services of others by distributing discounts, coupons, rebates, and special offers; Advertising and directory services, namely, promoting the services of others by providing a web page featuring links to the websites of others; Providing consumer information and related news in the field of consumer goods, retail services, hikes, scenic drives, hidden gems, attractions, theme parks, salons, eateries, and restaurants; Organizing and developing charitable projects that aim to raise money for others; Charitable services, namely, promoting goods and services for others; Television advertising; Digital advertising services; Promoting and marketing the goods and services of other by marketing and advertising them online, on social media platforms, and by newsletters" in International Class 035.

Exhibit B.

28.    Taylored Media's USPTO trademark application provides that its first date of use of the "CRUISIN' CT" Mark was September 2024. Exhibit B.

29.    On June 9, 2025, Nexstar received a letter from attorney Jamie Sternberg on behalf of Taylored Media, stating that it would not be ceasing the use of the trademark "CRUISIN' CONNECTICUT" but rather that her client "is free to use its name and logo wherever it chooses." Exhibit E, June 9, 2025 Correspondence from J. Sternberg to Nexstar.

30.    On June 30, 2025 Nexstar filed its application with the United States Patent and Trademark Office, U.S. Serial Number 99/260,157, for the "CRUISIN' CONNECTICUT"

trademark that it has used in commerce since September 2, 2016.  The application provides for use in connection with:

> "Providing online non-downloadable videos in the field of entertainment and local attractions and experiences; entertainment services, namely, the provision of video segments featuring local interest topics, attractions, and experiences delivered via television and the internet" in International Class 041.

> Exhibit A.

31.    On July 9, 2025, Nexstar filed a Letter of Protest against Taylored Media, LLC's application for "CRUISIN' CT" on the grounds that it is "similar to or functionally identical to [Plaintiff's] Mark CRUISIN' CONNECTICUT in appearance, sound, connotation, and commercial impression." Exhibit F, Letter of Protest. Moreover, use of the CRUISIN' CONNECTICUT Mark is the senior to Defendants' use or application of the CRUISIN' CT Mark and Plaintiff has had continuous use of the Mark since at least as early as September 2016. *Id.*

32.    Connecticut's postal code state abbreviation is CT such that CT has a substantially similar commercial impression to Connecticut.

33.    The services covered by the CRUISIN' CT Mark are identical or so highly related such that they will be marketed, sold, and distributed through the same or substantially the same channels of trade. Both Marks cover marketing and advertising services related to local attractions and news.

34.    As a result of Defendants' aforementioned acts of trademark infringement and unfair competition, potential customers are likely to be deceived as to the source of Defendants' services and products, as well as the source or affiliation of the parties' services and products. Defendants' infringing activities have caused and will continue to cause irreparable harm to Plaintiff and to the goodwill and reputation it owns in the CRUISIN' CONNECTICUT Mark.

## COUNT I

## FALSE DESIGNATION OF ORIGIN (FEDERAL)

35.    Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

36.    Defendants' use of the CRUISIN' CT Mark in connection with their services and commercial activities creates a false designation of origin, giving consumers the incorrect impression that such services and commercial activities emanate from Plaintiff. It falsely creates the impression that Plaintiff sponsors or approves of Defendants' products, and further falsely associates Defendants and their services with Plaintiff.

37.    Defendants' use of the CRUISIN' CT Mark is likely to cause confusion as to the affiliation, connection or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by Defendants.

38.    Defendants' activities as described above constitute the use in commerce of false designations of origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.    Defendants' use of the CRUISIN' CT Mark is a deliberate, knowing, and willful infringement of Plaintiff's rights in the CRUISIN' CONNECTICUT mark. Such acts have been undertaken in reckless and willful disregard for Plaintiff's rights in the CRUISIN CONNECICUT Mark and have been designed specifically to trade upon the goodwill associated with the CRUISIN' CONNECTICUT Mark.

40.    Defendants' infringement of the CRUISIN' CONNECTICUT Mark is causing irreparable injury to Plaintiff. Absent the intervention of this Court, Plaintiff will continue to suffer irreparable harm to its business, goodwill, and property for which there is no adequate remedy at law.

41.    As a result of Defendants' conduct, Plaintiff has suffered actual damages in an

amount to be proven at trial.

42.    This is an exceptional case and Plaintiff is entitled to recover reasonable attorneys'

fees pursuant to 15 U.S.C. § 1117.

## COUNT II

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (COMMON LAW)

43.    Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully

set forth herein.

44.     Defendants' conduct as described above constitutes trademark infringement and

unfair competition under the common law of the State of Connecticut.

45.    Defendants' infringement of the CRUISIN' CONNECTICUT Mark is causing

irreparable injury to Plaintiff. Absent the intervention of the Court, Plaintiff will continue to suffer

irreparable harm to its business, goodwill, and property for which there is no adequate remedy at

law.

46.    As a result of Defendants' conduct, Plaintiff has suffered actual damages in an

amount to be proven at trial.

## COUNT III

## CONNECTICUT UNFAIR TRADE PRACTICES ACT

47.    Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully

set forth herein.

48.    Defendant Taylored Media is a "person" within the meaning of Conn. Gen. Stat. §

42-110a(3).

49.    Defendant Jamie Taylor is a "person" within the meaning of Conn. Gen. Stat. § 42-

110a(3).

50.    At all relevant times to this complaint, Taylored Media and Jamie Taylor were

engaged in the business of providing marketing and advertising services related to local attractions

and news, which constitutes trade or commerce under Conn. Gen. Stat. § 42-110a(4).

51.     Defendants' activities in using the CRUISIN' CT Mark in commerce without the permission of Plaintiff as described above, harm Plaintiff because: (a) they are likely to constitute infringement of Plaintiff's CRUISIN' CONNECTICUT Mark; (b) they constitute the use in commerce of false designations of origin, sponsorship, or approval; and (c) they offend public policy by violating the statutes cite herein.

52.     By virtue of Defendants' actions in using the CRUISIN' CT Mark, the Defendants have engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of the Connecticut Unfair Practices Trade Act, Conn. Gen. Stat. § 42-110b.

53.     By virtue of the Defendants' actions, Plaintiff has suffered an ascertainable loss.

54.     Defendants' use of the CRUISIN' CT Mark is a deliberate, knowing and willful infringement of Plaintiff's rights in the CRUISIN' CONNECTICUT Mark. Such acts have been undertaken in reckless and willful disregard for Plaintiff's rights in the CRUISIN' CONNECTICUT Mark and have been designed specifically to trade upon the goodwill associated with the CRUISIN' CONNECTICUT Mark.

55.     Defendants' infringement of the CRUISIN' CONNECTICUT Mark is causing irreparable injury to Plaintiff. Absent the intervention of this Court, Plaintiff will continue to suffer irreparable harm to their business, goodwill, and property for which there is no adequate remedy at law.

56.     As a result of Defendants' conduct, Plaintiff has suffered actual damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      That Defendants, their agents, servants, officers, directors, employees, partners, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be permanently enjoined from: (1) Any use, distribution, advertisement, promotion, display, signage, or other exploitation of the CRUISIN' CT Mark; (2) Any use of Plaintiff's CRUISIN' CONNECTICUT Marks or any other marks, designs, products, designations or displays confusingly similar thereto or that otherwise violate Plaintiff's rights in its CRUISIN' CONNECTICUT Mark; (3) Committing any other acts calculated or likely to cause consumers to believe that Defendants and/or Defendants' Goods and Services are in any manner connected, affiliated or associated with or sponsored or approved by Plaintiff; and (4) Committing any other acts likely to infringe, dilute, or otherwise violate Plaintiff's CRUISIN' CONNECTICUT Mark or that constitute unfair competition with Plaintiff;

B.      Direct that the United States Patent and Trademark Office Commissioner of Trademarks refuse registration to Defendants' application for CRUISIN' CT and allow Plaintiff's application for CRUISIN' CONNECTICUT.

C.      Pursuant to 15 U.S.C. § 1117(a), that Defendants be directed to account to Plaintiff for all gains, profits, and advantages derived from Defendants' wrongful acts;

D.      Pursuant to 15 U.S.C. § 1117(a), common law and Conn. Gen. Stat. § 42-110g(d), that Plaintiff recover from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Plaintiff, together with interest on such amount and the costs of this action;

E.      Pursuant to 15 U.S.C. § 1117(a), common law and Conn. Gen. Stat. § 42-110g(d),

that Plaintiff recovers from Defendants their attorneys' fees and costs in this action;

F.      Pursuant to common law and Conn. Gen. Stat. § 42-110g, punitive and/or exemplary damages;

G.      Plaintiff be awarded such other and further relief as the Court may deem equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through their undersigned attorneys, request a trial by jury on all issues so triable.

Dated: July 11, 2025                              Respectfully submitted,

By: */s/ Amanda K. Greenspon*
Amanda K. Greenspon, (CT SBN #426639)
**MUNCK WILSON MANDALA, LLP**
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 210-4904
Facsimile: (972) 628-3616
Email: agreenspon@munckwilson.com

Jenifer C. Wallis (*Pro Hac Vice Forthcoming*)
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:(310) 855-3311
Facsimile: (972) 628-3616
Email: jwallis@munckwilson.com

*Attorneys for Plaintiffs,*
**NEXSTAR MEDIA INC.**